Susan Jane M. Brown (OSB # 054607)
Peter M.K. Frost (OSB # 911843)
Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon 97232
Ph. (503) 914-1323
Fax (541) 485-2457
brown@westernlaw.org
frost@westernlaw.org

Daniel R. Kruse (OSB # 064023)
Cascadia Wildlands
130 South Park Street
Eugene, OR 97401
Ph. (541) 870-0605
Fax (541) 484-4996
dkruse@cldc.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| CASCADIA WILDLANDS; and OREGON WILD,<br><br>              Plaintiffs,<br><br>vs.<br><br>UNITED STATES FOREST SERVICE,<br><br>              Defendant,<br><br>and<br><br>SENECA SAWMILL COMPANY,<br><br>              Defendant-Intervenor. | Civ. Case No. 10-6337-TC<br><br>PLAINTIFFS' RESPONSE TO INTERVENOR'S MOTION FOR CLARIFICATION |

## I. INTRODUCTION.

In its Motion for Clarification of this court's May 25th Order, Seneca oversteps its role as Intervenor and attempts to speak for the Forest Service, which it claims "lacks clarity" regarding the court's Order. Specifically, Seneca argues that the Forest Service is confused regarding the scope of its environmental analysis responsibilities should the agency wish to move forward with implementation of the Trapper Timber Sale in light of the legal infirmities identified by the court. Curiously, the Forest Service itself has not spoken to this issue. Regardless, Ninth Circuit Court of Appeals and Oregon Federal District Court case law provides the Forest Service with ample direction regarding the scope of its National Environmental Policy Act (NEPA) obligations on remand. Consequently, Seneca's motion should be denied.

## II. ARGUMENT.

### A. THE FOREST SERVICE HAS DISCRETION REGARDING HOW TO PROCEED ON REMAND.

The Forest Service has "considerable discretion" to determine the proper scope of a supplemental NEPA analysis. Northwest Resource Information Center, Inc. v. National Marine Fisheries Service, 56 F.3d 1060, 1066 (9th Cir. 1995) (stating the standard of judicial review for claim related to scope of supplemental NEPA analysis) (citing Thomas v. Peterson, 753 F.2d 754, 758 (9th Cir. 1985). While the Forest Service has ample discretion to determine how to comply with NEPA on remand, the scope of the supplemental analysis chosen by the agency must ultimately comply with NEPA. Northwest Resource Information Center, Inc., 753 F.2d at 758. Indeed, this court has been critical of the agency when it has conducted a cramped and overly narrow supplemental NEPA analysis to address significant new information. Oregon Natural Resources Council Action v. Forest Service, 445 F. Supp. 2d. 1211, 1217-1218 (D. Or. 2006) (invalidating Forest Service timber sale Supplemental Environmental Assessments for

failing to address court-ordered significant new information in addition to new information identified in public comments).

Clearly, the Forest Service has wide latitude regarding how it may proceed in redressing the new information identified by this court, but whatever path it chooses, the agency must comply with NEPA. Because the Forest Service itself has not indicated that it is confused regarding its NEPA obligations (Seneca has only offered hearsay to the contrary), the court should refrain from speculating regarding what aspects of its May 2011 Order need clarification. If, however, the court desires to provide additional direction regarding what is required of the Forest Service if it wishes to move forward with the Trapper Timber Sale, Plaintiffs point out infra that the case law in the Ninth Circuit and from the Oregon District Court is clear regarding the agency's NEPA obligations.

### B. THE SCOPE OF ENVIRONMENTAL ANALYSIS ON REMAND IS CLEAR.

Seneca argues that the Forest Service's environmental analysis of the consequences of the Trapper Timber Sale may be limited on remand, and offers two examples to support its claim. Seneca, 1 – 5. However, Intervenor overlooks precedent from the Oregon District Court, as well as the Ninth Circuit, which directly speaks to what the agency is required to do in order to address its failure to consider new information pertaining to the timber sale. The court need not look to an unreported case from Montana (Native Ecosystems Council v. Kimbell, No. 05-110-DWM (D. Mont. 2005) (Seneca Exhibit B)), or to a letter from Judge Redden to the parties in an Endangered Species Act case (Nat'l Wildlife Fed'n v. NMFS, No. 01-640-RE (D. Or. 2001) (Seneca Exhibit C)), to resolve this issue.

In a series of cases addressing the Forest Service's obligation to address new information presented by rare species surveys, Judge King clearly explained the scope of the agency's NEPA

PAGE 3 – PLAINTIFFS' RESPONSE TO MOTION FOR CLARIFICATION

obligation on remand.  Oregon Natural Resources Council Action v. Forest Service, 293 F.Supp.2d 1200 (D. Or. 2003) (ONRC I); Or. Natural Res. Council Action v. United States Forest Serv., 2003 U.S. Dist. LEXIS 24362, 5-7 (D. Or. Nov. 21, 2003) (order on injunctive relief); Oregon Natural Resources Council Action v. Forest Service, 445 F.Supp.2d 1211 (D. Or. 2006) (ONRC II).  In ONRC I, conservation Plaintiffs challenged six timber sale environmental assessments and decision notices/findings of no significant impact that were issued in 1997 and 1998.  ONRC I, 293 F.Supp.2d 1200, 1200-1204 (D. Or. 2003).  In 2001, an intervening court decision required the Forest Service to conduct surveys and provide no-harvest buffers for certain rare "Survey and Manage" species.  Id.; Oregon Natural Resources Council Action v. Forest Service, 59 F.Supp.2d 1085 (W. D. Wash. 1999).  Because the Forest Service had not conducted the requisite surveys for the six challenged timber sales in ONRC I, the agency prepared supplemental information reports (SIRs) in 2001 and 2002; but no supplemental environmental assessments (EAs) were prepared for the projects.  ONRC I, 293 F.Supp.2d 1200, 1200-1204 (D. Or. 2003).  Plaintiffs challenged the SIRs under the National Environmental Policy Act (NEPA), arguing that the SIRs did not satisfy NEPA's timing requirements.  Id. at 1206.

Relying heavily on the Ninth Circuit decision in Idaho Sporting Congress v. Alexander, 222 F.3d 562 (9th Cir. 2000), Judge King agreed with the Plaintiffs in ONRC I, and held that because the underlying EAs for the six challenged timber sales did not address the results of rare species surveys, or the environmental consequences of the timber harvest on the species, the EAs were deficient as a matter of law.  ONRC I, 293 F.Supp.2d at 1208.  The court explained that

> NEPA requires federal agencies to involve the public, consider alternatives, and disclose the impacts of a proposed action and alternatives to it before making a decision. 42 U.S.C. § 4332(2)(C). This ensures that the agency will carefully consider detailed information before it makes decisions and that the public may play a role in both the

decision making process and implementation of the decisions. The underlying EAs for the timber sales at issue did not properly frame the Forest Service's survey and manage duties, they did not analyze a range of alternatives based upon these duties, they did not evaluate completed surveys, they did not demonstrate that the Forest Service had all of the proper information before it before allowing logging, and they did not provide for public influence over the decisions. For all of these reasons, the underlying EAs are legally deficient. Under <u>Idaho Sporting Congress</u>, it is inconsistent with NEPA for an agency to use an SIR, rather than a supplemental EA or EIS, to correct this type of lapse. I find that the Forest Service's use of SIRs in this case violates NEPA.

*Id*. at 1209 (internal citations to <u>Friends of the Clearwater v. Dombeck</u>, 222 F.3d 552 (9th Cir. 2000) omitted). In a subsequent hearing on injunctive relief, Judge King remanded the six timber sale EAs and decision notices/findings of no significant impact (DN/FONSIs) to the Forest Service with instructions regarding the scope of the agency's NEPA obligations on remand. He explained

> The additional issues raised by the Forest Service and intervenors in this action relate to the specificity of the order directing the agency to comply with NEPA. The Forest Service believes that the injunctive relief order in this case should allow the agency to circulate its already-produced Supplemental Information Reports ("SIRs") for public comment as draft Environmental Assessments ("EAs"). The Forest Service also proposes in this case that the injunction specify that a "supplemental" EA is the appropriate document for the Forest Service to produce. I will not repeat the entire analysis found in my October 9, 2003, Opinion, but I note that the Forest Service's view of the appropriate remedy in this case suggests that the Forest Service takes too narrow a view of my ruling.
>
> I found that the EAs on which these timber sales are based "did not properly frame the Forest Service's survey and manage duties, they did not analyze a range of alternatives based upon these duties, they did not evaluate completed surveys, they did not demonstrate that the Forest Service had all of the proper information before it before allowing logging, and they did not provide for public influence over the decisions," and I found that the Forest Service's use of SIRs to cure these deficiencies violated NEPA. October 9, 2003, Opinion at 16. Consistent with this ruling, I will not issue an order of injunctive relief that allows the Forest Service to stamp the words "Supplemental Environmental Assessment" on the documents it has already produced and consider that compliance with NEPA.
>
> Nor will I, however, tell the Forest Service exactly what its NEPA analyses must contain in order to comply with the statute or otherwise predetermine the results of the agency's analyses. To this end, I will not specify whether the analyses should be "supplemental" EAs or "new" EAs, or for that matter, Environmental Impact Statements. Nor will I

> specify whether or the extent to which the Forest Service should develop new information about the presence of survey and manage species in the areas at issue….
>
> I expect that the Forest Service's NEPA analyses will disclose and analyze the agency's survey and manage duties based on the survey and manage standards and guidelines that are current at the time the analyses are prepared, that the Forest Service will discuss the methodologies used for the surveys and all results of completed surveys, and that the Forest Service will present a range of alternatives and explain its management decisions based on a proper framework. Beyond that, I am going to assume that the Forest Service will otherwise comply with NEPA and all other relevant laws in producing the analyses.

Or. Natural Res. Council Action v. United States Forest Serv., 2003 U.S. Dist. LEXIS 24362, 5-7 (D. Or. Nov. 21, 2003). Judge King indicated that "if the Forest Service decides that it wishes to propose to proceed with any logging or ground-disturbing activities on any of the six timber sales, it shall first comply with NEPA by preparing Environmental Assessments, Supplemental Environmental Assessments or Environmental Impact Statements that consider, analyze and disclose the impacts of any logging or other ground-disturbing activities," and also ordered the Forest Service to submit its revised NEPA analysis to the public for comment. Id. at 8-9.

After remand in ONRC I, the Forest Service issued five draft supplemental EAs (SEAs) covering the six sales and accepted public comment. ONRC II, 445 F.Supp.2d 1211, 1216 (D. Or. 2006). Public comments observed that the SEAs did not include contemporary and new information about a variety of environmental factors. Id. In its response to these comments, the Forest Service "took the position that the scope of the draft SEAs was set to specifically remedy the deficiencies found by the court. The Forest Service asserted that any consideration of species other than survey and manage species was outside the scope of the draft SEAs, that alternatives not based on survey and manage duties were also outside of the scope of the draft SEAs, and that the public had already had a chance to influence the basic go/no-go decision." Id. at 1217. Despite Judge King's remand and injunctive order to the contrary, the Forest Service maintained that

> …it had no legal obligation to prepare any further supplementation to its EAs beyond the SEAs, based on two findings: first, that there was no longer an "ongoing major federal action" because the previously-issued timber sale contracts constrained the agency's authority, and second, that none of the information contained or referenced in the comments represented significant new information bearing on the timber sales. The Forest Service reiterated its position that "our potential 'decision space' in this context is quite narrow, and is effectively limited to potential modifications that would be authorized by the applicable timber sale contracts and/or that relate to the purpose of our preparing the EA supplements," which, in its view, "was to evaluate and determine what steps to take, if any, after considering the new Survey & Manage species and lynx information."
>
> …Although it understood the court to have clarified that the agency's initial scope in preparing the SEAs was too narrow, the agency retained considerable discretion to define the purpose and needs of SEAs. The agency claimed that it exercised this discretion "in terms of addressing the NEPA violations the Court found in the original EAs" in the SEAs. That is, the Forest Service chose not to change the 2004 SEAs in any way.

*Id*. at 1217 (internal citations omitted).

Conservation Plaintiffs challenged the Forest Service's cramped environmental analysis on remand, and Judge King again sided with the Plaintiffs, rejecting all of the agency's arguments.[1] ONRC II, 445 F.Supp.2d 1211 (D. Or. 2006). Taking the Forest Service to task, the court observed that

> … Because the Forest Service had an obligation to supplement its original EAs and the agency still had to decide whether to proceed with the timber sales after preparing the SEAs, compliance with NEPA dictated that the agency thoroughly consider alternatives in light of the combined effects on survey and manage species together with other environmental impacts the agency has identified.
>
> …
>
> When an agency's initial analysis of alternatives involves a major deficiency, like the Forest Service's failure here to consider its duties under the survey and manage standards, the agency's decision was necessarily undertaken without a proper consideration of relevant alternatives. Its consideration of the no action alternatives in the original EAs was uninformed by the substantial duties under the survey and manage standards, duties that ultimately led the agency to reduce the acreage that it now proposes may be logged by up to 25% on some sales. The Forest Service nowhere has analyzed whether the impacts on the survey and manage species, when considered in conjunction

---

[1] Cascadia observes that the arguments raised by the Forest Service (and rejected by Judge King) in ONRC II are very similar to those now preferred by Seneca in its motion to clarify.

with other identified environmental effects which it found not to be significant in the original EAs, warrant the complete abandonment of this project…

*Id*. at 1223-1224. The court also explained that while the Forest Service was entitled to use a SIR to examine the allegedly new information for significance that was generated by public comment on the SEAs, the agency could not ignore the new information simply because it was outside of its Survey and Manage duties. *Id*. at 1226-1227. Indeed,

> In refusing to assess new information, at a time where the agency itself had requested a remand to consider new information and the projects were stayed, the Forest Service disregarded its duty under NEPA to be alert to information that might alter the result of the original analysis and to continue to take a hard look at the environmental effects of a planned action even after the logging was initially approved. Friends of the Clearwater, 222 F.3d at 557-58. Friends of the Clearwater specifically forecloses the Forest Service's claim that it should only respond to new information about environmental effects submitted in litigation in its own litigation filings. The Ninth Circuit found that the fact that "plaintiffs did not specifically identify this new information as the basis for their demands until after they sued the Forest Service did not excuse the Forest Service from earlier assessing the need for a SEIS." Id. at 558-59.

ONRC II, 445 F. Supp. 2d at 1228. To be clear, the Forest Service "may assess the significance of new information…in a less formal document" such as a SIR, the court explained, but in addition it "must respond to any comments which were addressed to the inadequacy of the SEA's alternatives analysis in the course of preparing its supplemental SEAs, or, if it chooses, in new EAs or EISs." *Id*.

In summarizing its holding and second remand to the agency, the court in ONRC II explained that

> On remand, the Forest Service must, at a minimum, prepare supplemental SEAs which consider a full range of alternatives, including a no action alternative for each sale, based on impacts to survey and manage species considered in conjunction with other environmental impacts the agency has identified on these sales. In addition, the agency must provide a more careful, complete, and thorough explanation of why new information regarding the Northern Spotted Owl is, or is not, significant and whether it warrants additional supplementation of the EAs and SEAs or preparation of an EIS. It must also evaluate the significance of other new information which it refused to consider in the [Response to Comments]. It is within the agency's discretion whether to prepare

these explanations in the context of a formal NEPA document. Friends of the Clearwater, 222 F.3d at 559-60. In preparing whatever supplemental documents it chooses, the Forest Service must take care to objectively analyze the environmental effects of these sales and not put any financial interest it may have in harvesting timber before compliance with NEPA. Earth Island Inst. v. United States Forest Serv., 442 F.3d 1147, 1178 (9th Cir. 2006); Metcalf [v. Daly], 214 F.3d [1135] at 1142, 1146 [9th Cir. 2000].

ONRC II, 445 F.Supp.2d at 1231-1232. Judge King also reminded the Forest Service of guidance provided by the Council on Environmental Quality (CEQ), the entity tasked with implementing NEPA across the federal government, that indicates that "as a rule of thumb, if the proposal has not yet been implemented…EISs that are more than 5 years old should be carefully reexamined to determine if the [significance] criteria in Section 1502.9 compel preparation of an EIS supplement." *Id*. at 1232 (quoting Council on Environmental Quality, Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations, 46 Fed. Reg. 18,026, 18,035 (1981)).[2] If the passage of time warranted new EAs or EISs, then the agency was obligated to prepare such documents or explain why it declined to do so. *Id*. (citing S. Or. Citizens Against Toxic Sprays, Inc. v. Clark, 720 F.2d 1475, 1480 (9th Cir. 1983)).

The take-away message from the ONRC line of cases, and the Ninth Circuit cases cited therein, is that while the agency has discretion regarding what type of NEPA analysis it may conduct on remand, there are limits to that discretion. First, the agency cannot use a SIR to correct an underlying EA that fails to comply with NEPA. ONRC I, 293 F.Supp.2d. at 1209 (D. Or. 2003); Idaho Sporting Congress, Inc. v. Alexander, 222 F.3d at 567 (9th Cir. 2000). Second, the agency must submit a supplemental environmental analysis to the public for comment, and respond to public comments, including substantive comments that bring new information to the attention of the agency. ONRC II, 445 F.Supp.2d at 1223-1228, 1231-1232. Third, the Forest

---

[2] In ONRC II, the underlying EAs were more than 10 years old; in the present case, the Trapper EA is more than 8 years old.

Service must issue a new decision notice and finding of no significant impact for the supplemental EA. *Id*. at ONRC II, 445 F.Supp.2d at 1232.

Given this clear precedent from this jurisdiction – which Seneca failed to cite in its memorandum in support of its motion for clarification – there is little reason to look to either an unreported extra-jurisdictional district court opinion (Native Ecosystems Council v. Kimbell, No. 05-110-DWM (D. Mont. 2005) (Seneca Exhibit B)), or a judicial letter to counsel in an Endangered Species Act case (Nat'l Wildlife Fed'n v. NMFS, No. 01-640-RE (D. Or. 2001) (Seneca Exhibit C)) to ascertain the Forest Service's legal obligations on remand. Nevertheless, Cascadia offers the following rebuttal to Seneca's two points of authority.

In Kimbell, Plaintiffs successfully challenged a timber sale EIS, in pertinent part, by alleging that the EIS did not demonstrate compliance with a forest plan standard relating to soils, and that the associated NEPA analysis did not disclose the agency's decisionmaking process. Native Ecosystems Council v. Kimbell, No. 05-110-DWM (D. Mont. 2005) (Seneca Exhibit A). The court remanded and enjoined the project until the agency conducted the requisite analysis of the sale's impact on soil resources, and provided the public with an opportunity to comment on the analysis. *Id*. at 22. The Forest Service prepared the requisite analysis, which confirmed its earlier conclusion in the EIS that the timber sale would not violate forest plan soil standards, and then moved to dissolve the injunction. Native Ecosystems Council v. Kimbell, No. 05-110-DWM (D. Mont. 2005) (Seneca Exhibit B), 3. Plaintiffs opposed the motion to dissolve the injunction, arguing that the supplemental analysis was deficient and that a new EIS was required. *Id*. The district court rejected Plaintiffs' arguments, and dissolved the injunction. *Id*. at 3-13.

Seneca sites this case for the proposition that a court can limit remand to a particular issue. Seneca, 2. There is nothing unusual about this premise, which Cascadia does not contest.

PAGE 10 – PLAINTIFFS' RESPONSE TO MOTION FOR CLARIFICATION

However, the facts of Kimbell are distinguishable from those in the present case. In Kimbell, the court found that the agency did not adequately disclose its rationale for how the timber sale at issue complied with the applicable forest plan, and remanded to the agency to supply the missing analysis. Kimbell (Seneca Exhibit A), 8-14. In contrast, in the present case, the court held that the Forest Service violated NEPA by failing to supplement the Trapper EA in response to significant new information. Cascadia Wildlands v. United States Forest Serv., 2011 U.S. Dist. LEXIS 55988, 22-38 (D. Or. May 24, 2011). Indeed, Kimbell did not involve significant new information at all, but rather the failure to disclose a rational connection between the facts found and the decision made. Kimbell (Seneca Exhibit A), 12-13. In this case, the Forest Service supplied an "analysis" in the various SIRs that purported to analyze new information, but this court held that analysis to be inadequate. Cascadia Wildlands, 2011 U.S. Dist. LEXIS 55988, 28-32, 34 (D. Or. May 24, 2011). In Kimbell, however, no analysis was provided in the first instance. Kimbell (Seneca Exhibit A), 12-13. Consequently, it was within the equitable discretion of the Montana district court to give the Forest Service the opportunity to cure its oversight, and, when that analysis supported the agency's conclusion that the project complied with the forest plan, to forgo preparing a new EIS. Native Ecosystems Council v. Kimbell, 304 Fed. Appx. 537 (9th Cir. 2008). Kimbell (an unreported case from another jurisdiction) does nothing to alter this court's holding in ONRC I and ONRC II, which expressly describe what the agency is required to do – and what is prudent for the Forest Service to consider – on remand in the Federal District of Oregon. ONRC I, 293 F.Supp.2d. at 1209 (D. Or. 2003); Idaho Sporting Congress, Inc. v. Alexander, 222 F.3d at 567 (9th Cir. 2000); ONRC II, 445 F.Supp.2d at 1223-1228, 1231-1232; see also, Idaho Sporting Congress v. Alexander, 222 F.3d 562 (9th Cir. 2000); Friends of the Clearwater v. Dombeck, 222 F.3d 552 (9th Cir. 2000).

Seneca also points to a letter from Judge Redden to the parties in the Snake River dam litigation, Nat'l Wildlife Fed'n v. NMFS, No. 01-640-RE (D. Or. 2001) (Seneca Exhibit C), for support for its contention that a court can remand to a federal agency on limited issues, and that the agency need not conduct an entirely new analysis on remand. Seneca, 4. However, the facts of that case are very different from those at issue with the Trapper Timber Sale. First, the Snake River dams litigation – and Judge Redden's letter – pertain to federal compliance with the Endangered Species Act, not NEPA. *Id.* Those two statutes have quite different purposes and procedures. People of Gambell v. Hodel, 774 F.2d 1414, 1421 (9th Cir. 1985), rev'd and vacated in party by Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531 (1987) (holding that "where each statute mandates separate and distinct procedures, compliance with the requirements of one does not compel the conclusion that the provisions of the other statute were considered); Adler v. Lewis, 675 F.2d 1085, 1096 (9th Cir. 1982) (observing that "compliance with one environmental statute does not assure compliance with another"). Seneca provides no authority for the proposition that a remand to consider a document relevant to a biological opinion is the same thing as remanding to the agency to address a failure to comply with NEPA's requirement to assess significant new information.

Similarly, the issue for Judge Redden appeared to be more about creating a complete record for judicial review than anything else. For example, his letter explained that the Adaptive Management Implementation Plan did not fall within any of the record-review rule for consideration of extra-record evidence, and because that Plan was integral to the government's conclusions in the 2008 BiOp, the agency should accept a limited remand to incorporate the Plan into the administrative record. Nat'l Wildlife Fed'n v. NMFS, No. 01-640-RE (D. Or. 2001) (Seneca Exhibit C), 1. In addition, Judge Redden encouraged the government to consider and

address new scientific information that had bearing on the conclusions in the BiOp, so that the court would have a complete decisionmaking record to consider. *Id*. at 2. While it is true that the court did not require the government to "start over from scratch" in addressing the Plan and any new information, it appears that this is because the court did not find the existing analysis lacking to the point of supplemental study.[3] Hence, Judge Redden's letter is properly viewed in the light of completing the administrative record prior to judicial review, rather than a substantive pronouncement on what is required for the Forest Service to comply with its NEPA obligations.

In sum, case law from the Federal District of Oregon and the Ninth Circuit clearly outline the Forest Service's scope of environmental analysis on remand, and no judicial clarification is necessary. Seneca's motion should be denied.

### C. A NEW DECISION TO IMPLEMENT THE TRAPPER TIMBER SALE IS ALMOST CERTAINLY REQUIRED.

Seneca also argues that clarification is needed so that the Forest Service does not unnecessarily prepare a new decision notice implementing the Trapper Timber Sale. Seneca, 5. Instead, Intervenor argues, new supplemental analysis may confirm the original DN/FONSI, such that a new decision document is not required. *Id*. Seneca's argument is unavailing for at least three reasons.

First, NEPA requires agencies to "prepare, circulate, and file a supplement to a statement in the same fashion (exclusive of scoping) as a draft and final statement unless alternative procedures are approved by the Council." 40 C.F.R. § 1502.9(c)(4). This includes "insur[ing] that environmental information is available to public officials and citizens before decisions are made and before actions are taken." *Id.* at § 1500.1(b). It would be contrary to the fundamental

---

[3] Of course, it is difficult to fully comprehend a court's rationale from just a letter to the parties of long-running litigation without a judicial opinion and legal citations.

purpose of NEPA to have an agency decision precede the analysis and public disclosure of significant information that has a direct bearing on the proposed action and its environmental impacts. ONRC I, 293 F.Supp. 2d at 1204 ("The purpose of NEPA is to foster better decision making and informed public participation for actions and affect the environment") (citing 42 U.S.C. § 4321; 40 C.F.R. § 1501.1(c)); Friends of the Clearwater v. Dombeck, 222 F.3d 552, 557 (9th Cir. 2000) (NEPA "ensures that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts; it also guarantees that the relevant information will be made available to the larger audience that may also play a role in both the decisionmaking process and the implementation of that decision") (quoting Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 349, 109 S.Ct. 1835 (1989)).

Second, as explained by this court in ONRC I and ONRC II, a new decision document is particularly important when, as here, the new information at issue changes the nature of the environmental impacts anticipated from the project, or when the agency makes a fundamentally different decision about the project. ONRC II, 455 F.Supp.2d 1211, 1223-1224 (D. Or. 2006). In the present case, the Forest Service's 2003 decision was based on the erroneous conclusion that the Trapper Project was "not likely to adversely affect" spotted owls. Cascadia Wildlands, 2011 U.S. Dist. LEXIS 55988 at 22-32 (D. Or. May 24, 2011). As a direct result of this erroneous conclusion, the impacts to spotted owls were "dismissed" as an insignificant issue in the 2003 environmental assessment, "eliminated from detailed study," "did not drive alternative development," and "did not have a direct influence" on the 2003 decision. AR 4230, 4413. It was also one of the stated reasons why the Forest Service did not analyze the impacts of logging in a full environmental impact statement ("EIS"), AR 4416, and was a basis for denying

Plaintiffs' administrative appeal. AR 4448. It is now accepted that the Trapper Project will adversely affect spotted owls. On the Forest Service's own record, the erroneous conclusion about spotted owls played a defining role in the decision framework, the scope of the analysis, and the development of alternatives. A new decision should clearly be made if and when the correct information is considered and publicly disclosed.

Similarly, the research and learning component of the Trapper Project was a "significant issue" that "drove the development of the alternatives," and had a direct influence on the decision. AR 4228-9. The Spies Letter, written recently by the Forest Services' scientists about the Trapper Project, calls into serious question the Forest Service's initial assumptions about the research value of the Project. AR 5018. Since one of the primary purposes and need of the Trapper Timber Sale was to conduct research to study the effects of the project on ecosystem and landscape processes, and since the "the value of anticipated lessons from going forward with logging of the Trapper Timber Sale is very low relative to what was anticipated when the sale and associated monitoring plans were developed in the 1990s," AR 5018, it is reasonable to expect that a new DN/FONSI will be required if the Forest Service intends to move forward with the project in light of the Spies Letter. It is further possible or even likely that additional information will come to the agency's attention during the comment period on any supplemental EA; thus, this information, too, may warrant a new DN/FONSI. See, ONRC II, 445 F.Supp.2d at 1231-1232.

Third, the Forest Service Handbook (FSH) strongly suggests that a new decision is required in the present case.[4] As Seneca points out, the FSH explains that when new information comes to light after a project decision has been made:

---

[4] While the Forest Service Handbook does not have the force and effect of law, lack of compliance with it is evidence of arbitrary and capricious behavior. Western Radio Services Co., Inc. v. Espy, 79 F.3d 896,

PAGE 15 – PLAINTIFFS' RESPONSE TO MOTION FOR CLARIFICATION

> Supplement or revise an EA if the interdisciplinary review of new information or changed circumstances indicates that changes in the EA are needed to address environmental concerns that have a bearing on the action or its impacts.
>
> Upon completion of the supplemented or revised EA, prepare a new finding of no significant impact (FONSI) which addresses the effects of the action. Reconsider the original decision; and, based upon the EA and FONSI, issue a new decision notice or document that the original decision is to remain in effect and unchanged. A new decision notice may address all or a portion of the original decision. Follow the instructions in chapter 40.
>
> If, based on the supplemented or revised EA, the proposed action may have a significant effect, issue a notice of intent to prepare an EIS. Follow the instructions in chapter 20.

Forest Service Handbook, 1909.15 (National Environmental Policy Act Handbook), Chapter 10 (Environmental Analysis), Section 18.4 (Correction, Supplementation, or Revision of Environmental Documents and Reconsideration of Decisions to Take Action), *available at* http://www.fs.fed.us/im/directives/fsh/1909.15/wo_1909.15_10.doc (last visited July 25, 2011). Here, the court has already determined that a supplemental EA is required. Cascadia Wildlands, 2011 U.S. Dist. LEXIS 55988 at 36 (D. Or. May 24, 2011). Therefore, "upon completion of the supplemented or revised EA, <u>prepare a new finding of no significant impact (FONSI)</u> which addresses the effects of the action. Reconsider the original decision; and, based upon the EA and FONSI, <u>issue a new decision notice</u> or document that the original decision is to remain in effect and unchanged. A new decision notice may address all or a portion of the original decision." FSH 1909.15, Chapter 10, Section 18.4. At the very least, the Forest Service must prepare a new FONSI, and given that the new information is both significant and is highly likely to change the environmental consequences of the action, a new decision notice is also almost certainly required. Cascadia Wildlands, 2011 U.S. Dist. LEXIS 55988 at 32 (information pertaining to spotted owls is new and significant), 37 (Spies Letter "calls into question the learning value of

---

901 (9th Cir. 1996), cert. denied, 519 U.S. 822 (1996).

the project" and "should be evaluated as part of a supplemental EA"); ONRC II, 455 F.Supp.2d 1211, 1223-1224 (D. Or. 2006).

The Forest Service would be well advised to not repeat the lessons of ONRC I and ONRC II. In those cases, Judge King admonished the agency for taking an overly narrow view of its NEPA obligation on remand. See, ONRC II, 445 F. Supp. 2d 1211, 1217 (D. Or. 2006). To avoid serial litigation as occurred in the ONRC line of cases, the Forest Service must issue a supplemental EA or a new EIS with a full range of alternatives that document the complete environmental consequences of the Trapper Timber Sale, including effects to northern spotted owls, the research value of the project, and impacts to other natural resources. The agency must also provide the public with an opportunity to comment on the new environmental analysis, and must consider and respond to any new information that comes out of that public process. Finally, assuming the Forest Service decides to move forward with the Trapper Timber Sale, the agency should issue a new decision document, and provide the public with administrative remedies. Only then can the Forest Service discharge its NEPA obligations.

### III.  CONCLUSION.

There is no indication from the Forest Service itself that the agency needs judicial clarification of this court's May 2011 Order requiring supplemental NEPA analysis of the Trapper Timber Sale; all this court has is an unsupported allegation from Seneca that there is a "lack of clarity" on the agency's part about how to proceed. In fact, though, there is no lack of clarity, given that both this court and the Ninth Circuit have addressed this exact situation at length and have provided the Forest Service with ample guidance pertaining to its NEPA obligations on remand. While the Forest Service has "considerable discretion" to determine the proper scope of a supplemental NEPA analysis, courts in this jurisdiction have robustly defined

what constitutes an adequate analysis. Consequently, Seneca's Motion for Clarification should be denied.

RESPECTFULLY SUBMITTED this 29th day of July, 2011.

   /s/ Susan Jane M. Brown   .
Susan Jane M. Brown (OSB # 054607)
Peter M.K. Frost (OSB # 911843)
Western Environmental Law Center
4107 NE Couch St.
Portland, Oregon 97232
Ph. (503) 914-1323
Fax (541) 485-2457
brown@westernlaw.org
frost@westernlaw.org

Daniel Kruse (OSB # 064023)
Cascadia Wildlands
130 South Park Street
Eugene, Oregon 97401
Tel. (541) 870-0605
Fax. (541) 484-4996
dkruse@cldc.org

Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that on July 29th 2011, I filed a copy of this document electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

    /s/ Susan Jane M. Brown
Susan Jane M. Brown (OSB # 054607)
Peter M.K. Frost (OSB # 911843)
Western Environmental Law Center
4107 NE Couch St.
Portland, Oregon 97232
Ph. (503) 914-1323
Fax (541) 485-2457
brown@westernlaw.org
frost@westernlaw.org

Daniel Kruse (OSB # 064023)
Cascadia Wildlands
130 South Park Street
Eugene, Oregon 97401
Tel. (541) 870-0605
Fax. (541) 484-4996
dkruse@cldc.org

Attorneys for Plaintiffs