Julie A. Weis, OSB 97432
Email: jweis@hk-law.com
HAGLUND KELLEY JONES & WILDER LLP
200 SW Market, Suite 1777
Portland, OR 97201
Phone: (503) 225-0777
Fax: (503) 225-1257

Dale Riddle, OSB 813527
Email: DRiddle@SenecaSawmill.com
Seneca Sawmill Company, Sr. Vice President/Legal Affairs
P.O. Box 851
Eugene, OR 97440
Phone: (541) 461-6233
Fax: (541) 689-6509

Attorneys for Defendant-Intervenor

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **CASCADIA WILDLANDS; and OREGON WILD**,<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES FOREST SERVICE, an administrative agency of the United States Department of Agriculture**,<br><br>Defendants,<br><br>And<br><br>**SENECA SAWMILL COMPANY**,<br><br>Defendant-Intervenor. | Civil No. 10-CV-06337-TC<br><br><br>**DEFENDANT-INTERVENOR'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLARIFICATION** |

I.  **INTRODUCTION.**

Seneca Sawmill Company (Seneca) has moved the Court for clarification of its May 24, 2011 Order enjoining the Trapper Project pending the Forest Service's supplementation, under the National Environmental Policy Act (NEPA), of the Trapper environmental assessment (EA).[1] Seneca seeks clarification in two respects, specifically asking the Court to clarify that: (1) the Order does not require the Forest Service to start from scratch on remand; and (2) the Order's reference to a "supplemental Decision Notice" was not intended to predetermine the outcome of the supplemental NEPA process by requiring a new decision on all issues as if Trapper were a new project. As a reminder, the Court held that "the Trapper Timber sale is enjoined pending the agency's preparation of a supplemental EA addressing the new information regarding the Northern Spotted owl and learning value of the project . . . ." Order at 25 (2011 U.S. Dist. LEXIS 55988, at *40 (D. Or. May 24, 2011)).

Plaintiffs (Cascadia) oppose clarification for the reasons stated in Plaintiffs' Response to Intervenor's Motion for Clarification (Cascadia Response Br.). Seneca believes Cascadia's opposition is not well taken and offers the following reply in further support of its motion for clarification.

II.  **ARGUMENT.**

   A.  **Seneca's Two Limited Remand Examples Are Instructive, Notwithstanding Cascadia's Effort to Marginalize Them.**

Seneca's brief in support of clarification offered two examples of limited remands to illustrate the propriety of an agency focusing its supplemental environmental analysis on court-identified deficiencies. Seneca first cited to the Basin Creek Hazardous Fuels Reduction Project

---

[1] Seneca's motion was brought under authority of FRCP 60(b). Under FRCP 62.1, the government's subsequent filing of a notice of appeal does not bar the Court from considering Seneca's motion.

PAGE 1 – REPLY MEM. IN SUPPORT OF CLARIFICATION

(Basin Creek) litigated in the District of Montana, simply because of undersigned counsel's familiarity with the highly instructive case due to representation of the defendant-intervenor. Cf. Cascadia Response Mem. at 10-11 (attempting to minimize Judge Molloy's decision by repeatedly describing it as unreported and from another jurisdiction). Seneca's second example referenced the Federal Columbia River Power System (FCRPS) litigation overseen by Judge Redden here in the District of Oregon (another case in which undersigned counsel represents a defendant-intervenor) simply to offer a timely local example illustrating the propriety of a limited remand. Seneca offered these particular examples not because they were the only ones available but rather to support the unremarkable proposition that courts ordering remand can state they do not expect an agency to start from scratch on remand. Even Cascadia "does not contest" that courts may properly order a limited remand. Cascadia Response Mem. at 10 (acknowledging "[t]here is nothing unusual" about a limited remand).

Despite not contesting the propriety of limited remands, Cascadia attempts to distinguish the Basin Creek and FCRPS examples offered by Seneca. Cascadia's attempt comes up short.

1. **Basin Creek Case**.

Cascadia's efforts to distinguish Basin Creek do not succeed. See Cascadia Response Mem. at 11. According to Cascadia, Basin Creek is not analogous because it did not involve significant new information or a supplemental information report (SIR) found to contain inadequate analysis. Id. These points miss the mark for two reasons.

First, in both cases, the reviewing court (Judge Molloy in Basin Creek and this Court in Trapper) found the agency's analysis lacking under the Administrative Procedure Act (APA) and ordered supplemental environmental analysis. Compare Docket Entry No. 44-1 at 23 (Exhibit A to Seneca's Memorandum in Support of Clarification at 22) (ordering the Basin Creek Project

PAGE 2 – REPLY MEM. IN SUPPORT OF CLARIFICATION

Haglund Kelley Jones & Wilder, LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257

"permanently enjoined and remanded to the Forest Service to conduct the required analysis of the Project's potential impact on soil productivity") with Order at 25 (2011 U.S. Dist. LEXIS 55988, at *40 (D. Or. May 24, 2011)) (ordering the Trapper Project "enjoined pending the agency's preparation of a supplemental EA addressing the new information regarding the Northern Spotted owl and learning value of the project"). On remand in Basin Creek, the resulting work product was a 35-page Final Supplement to the Basin Creek Hazardous Fuels Reduction Project FEIS (copy attached as Exhibit A for illustrative purposes only), which was made available for public comment and response thereto. There is not yet a resulting work product in this case, but the Court has ordered preparation of a similar supplemental NEPA document on remand. The supplemental NEPA document in Basin Creek led the Forest Service to conclude that neither a new Record of Decision (ROD) nor a modified ROD were necessary. See Exhibit B. Likewise, the supplemental NEPA document in this case ultimately will provide the basis for the Forest Service's decision whether or to what extent to issue a new or modified ROD for Trapper. Thus, the Basin Creek remand informs the path forward in this case.

Second, there is no merit to Cascadia's allegation that Basin Creek is inapposite because here the Trapper SIR was held to contain inadequate analysis. To be sure, this Court concluded that the agency's SIR failed to support its determination that a supplemental NEPA document was not required. The validity or invalidity of analysis in the SIR was not the issue, however – the analysis in a SIR cannot serve as a substitute for supplemental NEPA analysis. Idaho Sporting Congress v. U.S. Forest Serv., 222 F.3d 562, 566 (9th Cir. 2000). Rather, as in Basin Creek, the issue identified by the Court in this case was missing analysis on specific issues, for which purpose the case was remanded to the agency.

## 2. Federal Columbia River Power System Case.

Cascadia also fails in its bid to undermine Seneca's citation to the FCRPS case out of this District. See Seneca Mem. in Support of Clarification at 4-5 (discussing case involving operations of the entire Federal Columbia River Power System); Cascadia Response Mem. at 12-13 (inaccurately describing the case as the Snake River dam litigation). Seneca pointed to the FCRPS case as a local example of the propriety of limited remand in the APA context. Although Cascadia alleges the FCRPS case is inapposite because it was brought under the Endangered Species Act (ESA) rather than NEPA, both cases involved judicial review under the APA. Specifically, just as in this case, the "arbitrary and capricious" standard of review found in 5 U.S.C. § 706 governed resolution of the challenge to the 2008/2010 Biological Opinion (BiOp) for FCRPS operations before Judge Redden. See Bennett v. Spear, 520 U.S. 154, 174-77 (1997); National Wildlife Fed'n v. NMFS, No. 01-640, slip op. at 9 (D. Or. August 2, 2011) (FCRPS Slip Op. attached as Exhibit C).

Cascadia also seeks to minimize the referenced limited remand in the FCRPS case by inaccurately characterizing it as being "more about creating a complete record for judicial review than anything else." Cascadia Response Mem. at 12. See also id. at 13 n.3 (stating "it is difficult to fully comprehend a court's rationale from just a letter to the parties"). Although Seneca disagrees with Cascadia, the issue is moot because on August 5, 2011, Judge Redden issued a merits opinion in the FCRPS case that again ordered a limited remand, this time for further consideration by the agencies of "unidentified mitigation measures" in the 2008/2010 BiOp's out-years (2013-18). FCRPS Slip Op. at 3. See also id. at 10 (identifying flaws in mitigation measures "beyond 2013 when current plans expire or are scheduled to be completed").

Haglund Kelley Jones & Wilder, LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257

No two cases are identical, of course, and Seneca is not trying to equate this case with the FCRPS litigation generally. Rather, Seneca points to the limited remand(s) in the FCRPS case as examples of the rather unremarkable fact that courts ordering remand can clarify that they do not expect an agency to start from scratch on remand. Again, even Cascadia "does not contest" that courts may properly order a limited remand. Cascadia Response Mem. at 10.

> **B.    The ONRC Litigation Discussed by Cascadia is Instructive But Not Controlling.**

Cascadia cites to the ONRC litigation before Judge King of this District – ONRC Action v. U.S. Forest Serv., 293 F.Supp.2d 1200 (D. Or. 2003) (ONRC I); ONRC Action v. U.S. Forest Serv., Civil No. 03-613-KI, 2003 U.S. Dist. LEXIS 24362 (D. Or. Nov. 21, 2003) (order on permanent injunctive relief in ONRC I); and ONRC Action v. U.S. Forest Serv., 445 F.Supp.2d 1211 (D. Or. 2006) (ONRC II) – for the proposition that it provides ample direction on the scope of APA remands. Cascadia Response Mem. at 3-10. Seneca disagrees that the ONRC holdings dictate the outcome of the motion before this Court.

In ONRC I, the court reviewed six Oregon timber sale projects supported by EAs and concluded that the EAs were deficient under NEPA for failure to comply with survey and manage requirements. 293 F.Supp.2d at 1208 (observing that it was difficult to discern whether the plaintiffs were challenging the EAs directly versus on failure to supplement grounds but ultimately concluding the underlying EAs themselves were deficient).[2] The court also held that

---

[2] In contrast with ONRC I, the NEPA claim brought by Cascadia in this case did not and could not challenge the Trapper EA per se. This is because a direct challenge was barred on statute of limitations grounds. 28 U.S.C. § 2401(a); Sierra Club v. Penfold, 857 F.2d 1307, 1315 (9th Cir. 1988) (applying statute of limitations in context of NEPA). Instead, Cascadia pursued a NEPA failure to supplement claim.

PAGE 5 – REPLY MEM. IN SUPPORT OF CLARIFICATION

Haglund Kelley Jones & Wilder, LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257

the agency's effort to correct the deficiencies in the EAs via the use of supplemental information reports (SIRs) ran afoul of NEPA. Id. at 1209.

Subsequently, in issuing a permanent injunction, the court rejected certain arguments that in no way resemble those being made by Seneca in this case. Specifically, the court rejected the agency's request for permission "to circulate its already-produced . . . SIRs . . . for public comment as draft . . . EAs," stating it would not "allow[] the Forest Service to stamp the words 'Supplemental Environmental Assessment' on the documents it has already produced and consider that compliance with NEPA." 2003 U.S. Dist. LEXIS 24362, at *6-7. Here, no such request or even suggestion has been made. Also rejected in the ONRC I litigation was the agency's request that the court specify the exact type of NEPA document that should be generated on remand, namely a supplemental EA, with the court stating it would not "specify whether the analyses should be 'supplemental' EAs or 'new' EAs, or for that matter, Environmental Impact Statements." Id. Here, in contrast, Seneca has specifically sought clarification that the Court's May 24, 2011 Order was not intended to predetermine the work product outcome of the Forest Service's supplemental NEPA analysis. Seneca Mem. in Support of Clarification at 5-6. As for what the Forest Service was expected to assess in its supplemental NEPA analysis on remand, the court usefully stated its expectation that the Forest Service would:

> Disclose and analyze the agency's survey and manage duties based on the survey and manage standards and guidelines that are current at the time the analyses are prepared, that the Forest Service will discuss the methodologies used for the surveys, and all results of completed surveys, and that the Forest Service will present a range of alternatives and explain its management decisions based on a proper framework. Beyond that, I am going to assume that the Forest Service will otherwise comply with NEPA and all other relevant laws in producing the analyses.

2003 Dist. LEXIS 24362, at *7.

PAGE 6 – REPLY MEM. IN SUPPORT OF CLARIFICATION

Haglund Kelley Jones & Wilder, LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257

By April 2004, the Forest Service had prepared supplemental EAs (SEAs). A few months later, when the parties were before Judge King on a procedural matter, the court took the opportunity to inform the agency "that the remand was not as narrow in scope as it appeared to believe in light of the limited information it included in the SEAs."[3] ONRC II, 445 F.Supp.2d at 1217. In response, the Forest Service requested, and was granted, "a stay and further remand to consider various additional specific items raised during the public comment process that were not directly related to the survey and manage issues." Id. It was not until two years later that the Forest Service moved the court to lift the stay based on its completion of the remand tasks, pointing to a SIR (the 2006 Review & Analysis) in addition to the SEAs. Id.

The ONRC II decision dealt with the adequacy of the agency's supplemental NEPA documentation completed *three years after remand*. Thus, ONRC II was in a procedural posture quite unlike this case, which was remanded to the agency less than three months ago. Still, Seneca offers two observations on ONRC II. First, the court carefully distinguished between new information that could properly be assessed in a SIR versus the "survey and manage duties which resulted in the first remand in this case" due to the inadequacy of the EAs themselves.[4] Id. at 1223. See also id. at 1225-26 (discussing same). Second, although the court ultimately concluded the Forest Service had unduly constrained its NEPA analysis on remand, that holding

---

[3] As explained in ONRC II, the Forest Service took the position that its supplemental analysis on remand was constrained to a narrow decision space by: (1) binding timber sale contracts; and (2) no ongoing major federal action, a theory predicated on the idea that the award of the timber sale contracts represented the culmination of the major federal action. The court found the agency "wrong . . . on both arguments" and concluded the "errors infected the agency's analysis in both the SEAs" and a subsequent SIR. 445 F.Supp.2d at 1219.

[4] Again, in contrast with the ONRC litigation, the NEPA claim brought by Cascadia in this case did not and could not challenge the Trapper EA per se under NEPA because such a direct challenge was time-barred. Instead, this case involved only a failure to supplement claim.

cannot be divorced from the facts of the case. Among other things, the agency had voluntarily requested an additional two-year remand presumably to ensure full compliance with its NEPA obligations. Id. at 1229 ("It must be presumed that, after the Forest Service asked the court for the voluntary remand in August 2004, it was undertaking in good faith to analyze objectively the additional information available to it regarding these projects . . . ."). The court found the juxtaposition of the "two-year delay" and the overly-narrow NEPA analysis "troubling." Id. at 1232. Put simply, those are not our facts.

      C.      **Cascadia's Miscellaneous Points are Not Persuasive.**

Finally, there is no merit to Cascadia's three points as to why Seneca is mistaken that a new decision document on all issues is not the inevitable outcome on remand. See Cascadia Response Mem. at 13-16.

First, Cascadia's discussion about the need for public comment on supplemental NEPA documents is beside the point. Cascadia Response Mem. at 13-14. Seneca has not suggested that the Trapper supplemental EA be withheld from public comment and response thereto. But the need for public comment does not equate to a need for a new decision document. Indeed, the Final Supplement to the Basin Creek Hazardous Fuels Reduction Project FEIS discussed above (and attached as Exhibit A) was made available for public comment, after which the agency properly concluded that neither a new or modified ROD was necessary. See Exhibit B. See also 36 C.F.R. § 215.12(b) (referring to the situation where a new decision is not needed following NEPA supplementation); Forest Service Handbook 1909.15, Chapter 10, Section 18.4 (recognizing that a supplemental decision is not the inevitable outcome of a supplemental NEPA analysis, and that where a supplemental decision is warranted, it may be limited in scope).

Haglund Kelley Jones & Wilder, LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257

Second, Cascadia's discussion about spotted owls and the learning component of the Trapper Project misses the point. Cascadia Response Mem. at 14-15. Seneca's request for clarification is based on the simple premise that it is not for the Court (or Cascadia) to predetermine the exact work product outcome of the remand process.[5]

Third, there is no merit to Cascadia's statement that the Forest Service Handbook "strongly suggests that a new decision is required" in this case. Cascadia Response Mem. at 15. The quoted sentence from the Forest Service Handbook actually recognizes several possible outcomes, including issuing a new decision notice, documenting that the original decision is to remain in effect and unchanged, or issuing a new decision that addresses only part of the original decision. Cascadia Response Mem. at 16 (quoting Forest Service Handbook 1909.15, Chapter 10, Section 18.4). Cascadia's underlining of the phrase "issue a new decision notice" for emphasis, see id., does not magically cause the rest of the provision to disappear. In short, the Forest Service Handbook does not elevate one outcome over the other – nor should it given NEPA's distaste for predetermined outcomes.

## III. CONCLUSION.

For the foregoing reasons, and based on the argument set forth in Seneca's opening brief, the Court should clarify that its May 24, 2011 ruling: (1) does not mandate that the Forest Service take a NEPA "hard look" at issues other than those found deficient by the Court, i.e. northern spotted owls and the learning value of the Trapper Project; and (2) does not

---

[5] Factually, Cascadia is not on solid ground when pointing to the Spies letter for the proposition that a decline in the research value of Trapper is undisputed by the Forest Service. As was discussed at the hearing and is acknowledged in the Court's opinion, the Spies letter "does not represent official Forest Service opinion," Order at 23 (2011 U.S. Dist. LEXIS 55988, at *37), and was never evaluated by the Forest Service for NEPA significance. Order at 22 (2011 U.S. Dist. LEXIS 55988, at *34).

Haglund Kelley Jones & Wilder, LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257

predetermine the outcome of the supplemental NEPA analysis ordered by the Court regarding the northern spotted owl and the learning value of the Trapper Project.

RESPECTFULLY SUBMITTED this 15th day of August, 2011.

HAGLUND KELLEY JONES & WILDER LLP

By:   /s/ Julie A. Weis
      Julie A. Weis, OSB 97432

SENECA SAWMILL COMPANY

By:   /s/ Dale Riddle
      Dale Riddle, OSB 813527

Attorneys for Defendant-Intervenor

PAGE 10 – REPLY MEM. IN SUPPORT OF CLARIFICATION

**Haglund Kelley Jones & Wilder, LLP**
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257